**BANK OF COLUMBIA, (SMITH v.)** See Case No. 13,011.

---

# Case No. 881.

## BANK OF COLUMBIA v. SWEENY.

### [2 Cranch, C. C. 704.] [1]

Circuit Court, District of Columbia. May Term, 1826. [2]

WRITS—EXECUTION WITHOUT JUDGMENT—PLEA OF LIMITATION—CHARTER OF BANK OF COLUMBIA.

Upon the return of an execution issued by the president of the Bank of Columbia, without a judgment, under the 14th section of its charter

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Affirmed in 2 Pet. (27 U. S.) 671.]

---

of 1793, if the defendant disputes the debt, the court will order an issue to be made up, and will permit the defendant to plead the statute of limitations.

[See Bank of Columbia v. Cook, Case No. 864.]

[See note at end of case.]

At law. Upon the return of a ca. sa. issued by order of the president of the Bank of Columbia, under the 14th section of its charter, of 1793, c. 30, without a previous judgment, the defendant [George Sweeny] having disputed the debt, the court ordered an issue to be made up between the parties, and for that purpose required the plaintiffs to file their declaration within —— days, and the defendant to plead thereto within three days after notice of filing the declaration. Whereupon the plaintiffs filed their declaration in assumpsit as upon a wager that the debt claimed was due; to which the defendant pleaded the general issue, and offered to plead the statute of limitations, namely, that the defendant did not assume at any time "within three years next before the commencement of this suit;" and that the plaintiffs' cause of action "did not accrue at any time within three years next before the commencement of this suit." To the filing of the plea of limitations the plaintiffs objected. [Objection overruled. Plea of limitations subsequently filed. For opinion on hearing of plea, see Bank of Columbia v. Sweeny, Case No. 882.] By the 14th section of the charter of 1793, c. 30, "if the defendant shall dispute the debt, or any part of it," the court is required to "order an issue to be joined and trial had," at the return term of the execution. [See opinion of Chief Justice Marshall on application for a mandamus to compel the court to have issue joined. Bank of Columbia v. Sweeny, 1 Pet. (26 U. S.) 567.]

Mr. Key and Mr. Jones, for the plaintiffs, contended that the charter only allowed the defendant, at the return of the execution, to dispute the debt. The plea of limitations does not dispute the debt; it only goes to bar the remedy by certain forms of action. Pearsall v. Dwight, 2 Mass. 84; Esp. N. P. 563; [Lindo v. Gardner,] 1 Cranch, [5 U. S.] 343, [1 Cranch,] Append. 465. And this is not one of the forms of action to which the statute applies. Indeed, this is not an action; but if it is, it is not one of those enumerated in the statute. The debt remains for every purpose except that of supporting any of the forms of action barred by the statute. This is a new remedy given by the charter, and is obligatory upon those only who have voluntarily subjected themselves to it, by making their notes "negotiable in the Bank of Columbia." If this is to be considered as an action, the plaintiffs' right of action did not accrue until the president of the bank had made a personal demand upon the defendant, according to the forms prescribed in the charter. The charter only al-

lows the defendant to plead to the debt, not to the action. The order of the president of the bank to the clerk of the court to issue the execution is equivalent to a judgment; and the charter declares that it shall be as valid as any execution issued upon a judgment of a court. The statute of limitations applies only to such forms of action as were then in existence; but this is a new remedy, and not within the prohibition of the statute.

Mr. Swann and Mr. Ashton, contra. The charter only meant to give a speedy trial at the first term, and to enable the plaintiffs to obtain security in the first instance, without waiting the slow process of the common law. It did not mean to deprive the defendant of any defence which he might have if sued in any other form. The statute is a bar to the debt. Hellings v. Shaw, 2 Taunt. 237, [7 Taunt. 608.]

CRANCH, Circuit Judge, after stating the case, and the provisions of the 14th section of the charter, delivered the opinion of the court, as follows, (nem. con.:)

The expressions in the 14th section of the charter seem to imply that there should be a declaration in some of the usual forms of action. The plaintiffs, in the present case, have selected the action of assumpsit. So far as regards the trial, it is not important by what sort of process the defendant is brought into court. There is nothing in the act of 1793, c. 30, (the charter of the bank,) which expressly deprives him of any ground of defence which he would have had, if he had been brought in by the ordinary process of capias ad respondendum, instead of that of capias ad satisfaciendum. When brought in he has a right to dispute the debt, and to have a full and fair trial. The object of the summary remedy is to prevent delay, and to enable the bank to obtain security; not to deprive the defendant of the means of defence enjoyed by other debtors. So far as it is summary it is in derogation of common right, and must be construed strictly.

It is true that by the 14th section of the charter, the execution is to be "as valid and effectual in law, to all intents and purposes as if it had issued on a judgment regularly obtained in the ordinary course of proceeding;" and so it is while it exists. But if, upon the trial, it should be found that the plaintiffs ought not to have the execution, the court has the power to quash it. The validity of the execution cannot affect the trial.

But it is said that if this execution be the commencement of an action as seemed to be admitted by Mr. Key, in arguing the case of Bank of Columbia v. Bunnel, in this court at April term, 1822, [Case No. 863,] and the case of Bank of Columbia v. Okely, in the supreme court, and as suggested by Mr. Justice Johnson, in delivering the opinion of the court in the latter case. 4 Wheat. [17 U. S.] 239,[3] it is not within the description of actions limited by the statute of limitations; which statute affects the remedy only; not the right. To this it may be answered, that no man ought to be deprived of a plain, common right, by doubtful implication or remote inference. The statute of limitations is a general statute. Every man has a right to claim the benefit of it; and some of the wisest judges have said it was a beneficial statute. The prohibition to use it in the present case is doubtful. It is supported only by doubtful inference. The issue to be tried is left to the discretion of the judges, who are required to see "that justice be done in the speediest manner." It cannot be just that a man should be deprived of a lawful defence, unless by his own neglect to avail himself of it in proper time. This is the first time the defendant has had an opportunity to plead the statute; and we cannot say that a defence which has been authorized by law, and in common use for more than a century and a half, is an unjust defence. If the plaintiffs had commenced their action by the usual process, which they had a right to do, this defence would have been clearly open to the defendant, and it is not probable that the legislature intended to leave it to the option of the plaintiffs, whether the defendant should or should not be permitted to avail himself of the statute of limitations. We think, therefore, that the defendant has a right to plead the statute, and ought to be permitted now to file the plea.

Verdict and judgment for the defendant.

[NOTE. This decision was affirmed in Bank of Columbia v. Sweeney, 2 Pet. (27 U. S.) 671. Mr. Chief Justice Marshall, in delivering the opinion, quoted the provision of the Maryland act of incorporation at length, and said: "The execution being the first process under this extraordinary act, its emanation must be equivalent, so far as respects the bar created by the act of limitations, to suing out original process in a suit commenced in the usual way. * * * The great object of the incorporating act appears to have been to give the bank the most expeditious remedy possible for the collection of the money due to it. * * * But the law did not intend, by this summary process, to deprive the debtor of all defense. Although all delay was cut off, he was permitted, on the return of the execution, to dispute the whole, or any part of the debt. But while the law allows him to dispute the debt, it still guards against delay. An issue is to be made up immediately, and tried at the same term. While the law thus carefully guards against procrastination, it does not interfere with the defense which the party is at liberty to set up. It does not prescribe the nature of that defense, or deprive him of any which might have been used, had the action been commenced in the ordinary way. Had the Bank of Columbia proceeded in the common course of law, the defendant could have pleaded the act of limitations in bar of the action. If we are correct in saying that the object of the section of the incorporating act which has been recited was expedition,

[3] See, also, 2 Wms. Saund. 6, note 1: "Whenever the defendant may plead to any writ, whether original or judicial, (as this is) it is in law an action."

not the ademption, of legal defenses, we think this a mode of disputing the debt, of which he might still avail himself."]